[No. 10293.   Department One.   January 25, 1913.]

C. M. WARD, *Appellant,* v. CHARLES F. MAGAHA, *as Executor etc., Respondent.*[1]

EXECUTORS AND ADMINISTRATORS—CLAIMS AGAINST ESTATE—PRESENTATION—SPECIAL ADMINISTRATORS—POWERS—"DEBTS."   Under Rem. & Bal. Code, § 1420, authorizing the appointment of a special administrator under certain conditions "to collect and preserve the effects of the deceased," §§ 1421, 1422, requiring that he account for all goods, chattels, "debts" and effects and collect and preserve all goods, chattels, and "debts," § 1423, providing that his duties shall cease upon granting letters testamentary or of administration, and § 1424, providing that he shall not be liable to an action by any creditor of the deceased, the words "debts" includes only debts owing to the deceased; and the object being only to preserve the estate pending formal administration, and every provision of law relating to claims against the estate being elsewhere treated, a claim presented to and rejected by a special administrator is of no effect and insufficient to prevent the running of the statute of nonclaim, Id., § 1479, providing that no action shall be maintained on a claim against the estate unless it shall have been first presented to the executor or administrator, which is mandatory.

SAME—CLAIMS—FAILURE TO PRESENT—WAIVER—OBJECTION—HOW PASSED—PLEADING.   The presentment of a claim against an estate under the statute of nonclaim is not entirely a matter of abatement, but a fact essential to a cause of action thereon, so that objection that no claim was filed may be first raised during the progress of the trial by the objection that the complaint does not state facts sufficient to constitute a cause of action.

SAME—PRESENTMENT—WAIVER.   An executor or administrator has no power to waive the statute of nonclaim, Rem. & Bal. Code, § 1479, providing that no holder of a claim against an estate shall maintain an action thereon unless the claim shall have been first presented (Overruling *Neis v. Farquharson,* 9 Wash. 508).

Appeal from a judgment of the superior court for King county, Gilliam, J., entered February 13, 1912, dismissing an action to enforce a claim against the estate of a decedent, after a trial before the court.   Affirmed.

*Edgar J. Wright* and *J. L. Corrigan,* for appellant.

*J. H. Allen,* for respondent.

[1]Reported in 129 Pac. 395.

CHADWICK, J.—This is an action brought to recover a debt against the estate of Robert J. English, deceased. English died testate on September 27, 1909, and on December 1, 1909, Robert Boyker was appointed special administrator of the estate, the executor at the time being a nonresident. In August following, defendant Charles F. Magaha, who was named as an executor of the will, qualified and has since administered the estate. After the appointment of Boyker, a claim in due form was presented by plaintiff. It was thereafter rejected, whereupon this suit was brought, pending which and after the answer had been filed, the attorneys for the respective parties stipulated that the present executor should be substituted as defendant, and that the case should proceed to trial upon the pleadings as then made up. Upon the trial of the case, it appearing that the claim had never been presented to the executor, the court sustained a motion to dismiss the case, and from a judgment of dismissal, plaintiff has appealed. The concrete questions presented are: (1) Is the presentation of a claim to a special administrator a sufficient presentation under our statute of nonclaim? (2) If the presentation was not formal, was it waived by answering and going to trial on the merits?

It is clearly the policy of our law to keep the administration of estates within the hands of regularly appointed administrators, and to rely upon special administrators only in cases of emergency and for a limited time. Sections 1420-1425, Rem. & Bal. Code. Section 1420, Rem. & Bal. Code, enumerates the conditions under which a special administrator may be appointed, and defines his duties " . . . to collect and preserve the effects of the deceased . . ." Section 1421 provides for the giving of a bond with condition that he will return a true inventory of the "goods, chattels, rights, and credits," and will account for all "goods, chattels, *debts* and effects" of the deceased. Section 1422 provides that he shall collect all "goods, chattels, and *debts*," and preserve the same for the executor or administrator when

appointed. Section 1423 provides that his duties shall cease upon the granting of letters testamentary or of administration. Section 1424 provides that the special administrator "shall not be liable to an action by any creditor of the deceased."

In discussing sections 1421 and 1422, it is argued that, because the statute uses the words "rights and credits" and "debts," "debts" must· mean debts owing by the deceased. Taking the whole statute, its words and purpose, we think it intends to cover only such debts and choses in action as may be assets of the estate. The only object in appointing a special administrator is to preserve the assets pending a formal administration, and nowhere is the matter of debts owing by the deceased mentioned, except the provision that the limitation for all suits shall begin to run from the time of granting letters, and that the "special administrator shall not be liable to any action by any creditor." Every provision of the law going to the matter of claims is elsewhere covered, and we will not presume that the legislature intended to leave the right to present a claim to a special administrator concealed in words of doubtful meaning. Counsel says, however, that although the law may be that a special administrator shall not be liable to suit, it nowhere says that a creditor cannot serve his claim on the special administrator; that it is the duty of the special administrator to keep such claims and turn them over to his successor for approval or rejection.

There is much of equity in the argument advanced by counsel, but all claims against estates are collectible under the statute, and not otherwise; and while the statute does not say in terms that a claim cannot be presented to the special administrator, it does say, inferentially at least, that a special administrator shall have nothing to do with claims. His duties as defined omit all reference thereto. This seems certain when his duties are compared with the duties of an executor or administrator, it being there provided that they

shall give notice to creditors and make provision for the payment of claims. The statute does say that "no holder of any claim against an estate shall maintain an action thereon, unless the claim shall have been first presented to the executor or administrator." Rem. & Bal. Code, § 1479. This section has been held mandatory by this court. *McFarland v. Fairlamb*, 18 Wash. 601, 52 Pac. 239; *Strong v. Eldridge*, 8 Wash. 595, 36 Pac. 696; *Foley v. McDonnell*, 48 Wash. 272, 93 Pac. 321.

The powers of a special administrator are purely statutory, and are limited to the collection and preservation of the personal estate and to caring for the real property for the general administrator when appointed. He has no power to exercise the powers and duties conferred upon a regular administrator, "such as the allowance of claims." 18 Cyc. 1326. *State ex rel. Bartlett v. Second Judicial District*, 18 Mont. 481, 46 Pac. 259; *In re Ford's Estate*, 29 Mont. 283, 74 Pac. 735; *Estate of Sackett*, 78 Cal. 300, 20 Pac. 863; *In re Wincox's Estate*, 186 Ill. 445, 57 N. E. 1073; *Succession of Supple*, 23 La. Ann. 24; *In re Parish Estate*, 29 Barb. 627.

In the first case cited, it was held that, the power of a special administrator being statutory, he could neither allow nor reject a claim, and that an order of the district court directing the payment of an indebtedness was void. In *In re Ford's Estate*, the special administrator was denied credit for expenses incurred in the appointment of appraisers and the expense of publishing notice to creditors, because he was without authority to incur either, it being held that to sanction his publication of notice to creditors would be to limit the time for the presentation of claims in plain contravention of the statute.

It being clear, upon principle and authority as well as the statute, that a special administrator has no power to pay claims against the estate, it follows that he has no authority to either allow or reject them. This being so, the ques-

tion for us to decide is whether a creditor of an es-
tate who has never made legal presentation of his claim, and
who has commenced an action against one who cannot be
sued under the statute (Rem. & Bal. Code, § 1424), can re-
cover upon the sole ground that the defendant executor has
stipulated to adopt the pleadings filed by the special admin-
istrator, and did not raise the objection as to presentation
until the trial was in progress. In other words, was the ob-
jection urged waived by the executor when he adopted an
answer going to the merits and went to trial upon it? Re-
spondent takes the position that the complaint does not state
a cause of action, and that, under repeated rulings of this
court, an objection as to the sufficiency of the complaint can
be made at any time, even in this court. It is unnecessary
to collect or review the decisions to sustain this proposition.
On the other hand, appellant contends that the failure to
present the claim in proper form is matter of abatement only,
and unless pleaded, is waived. To sustain this position, he
relies upon many cases, among them: *Clayton v. Dinwoodey,*
33 Utah 251, 93 Pac. 723; *Bemmerly v. Woodward,* 124 Cal.
568, 57 Pac. 561; *In re Morgan's Estate,* 46 Ore. 233, 77
Pac. 608, 78 Pac. 1029.

We cite these cases because the statutes of California,
Oregon and Utah are substantially the same as our own. We
may grant that these cases sustain appellant's contention,
although this court has held contrary to the rule of the
Utah case; but they will not be held to control this case, for
the rule of practice in this state is that an objection
to a complaint because it does not state a cause of action may
be taken at any stage of the proceedings. In view of our
special statute of nonclaim, we think the formality of pre-
sentment is not entirely a matter of abatement. It is true
the debt may live, but the statute is designed for the pro-
tection of estates and to bar a recovery. The reasoning of
the cases above noted is not entirely satisfactory, nor is
the California case in entire accord with the reasoning of

other cases decided by the same court. The general rule is that an executor is a trustee for the heirs, and in no sense stands in the shoes of the deceased; that he is bound by the statute, and cannot waive, as against the heirs or devisees, any requirement of the statute. 18 Cyc. 500; 11 Am. & Eng. Ency. Law (2d ed.), p. 924; *Cochrell v. Seasongood* (Miss.), *33* South. 77; *Winchell v. Sanger,* 73 Conn. 399, 47 Atl. 706, 66 L. R. A. 935; *Fitzgerald's Estate v. First Nat. Bank,* 64 Neb. 260, 89 N. W. 813 (syllabus); *Farwell v. Richardson,* 10 N. D. 34, 84 N. W. 558; *Miller v. Ewing,* 68 Ohio St. 176, 67 N. E. 292; *Thompson v. Hoxsie,* 25 R. I. 377, 55 Atl. 930.

Our views are further sustained by the holding of almost all courts, that the plea of the statute of limitations cannot be waived or omitted by an administrator; if so, he cannot, by such omission, waive the bar of the statute of nonclaim as against the estate. The cases of *Donnerberg v. Oppenheimer,* 15 Wash. 290, 46 Pac. 254; *Megrath v. Gilmore,* 15 Wash. 558, 46 Pac. 1032, and *Neis v. Farquharson,* 9 Wash. 508, 37 Pac. 697, are also relied on. The *Donnerberg* case did not decide "that presentation as required by Rem. & Bal. Code, § 1479, was not necessary before the commencement of the action." *McFarland v. Fairlamb, supra.* The action was pending at the time of the death of the defendant in the *Megrath* case. In *Neis v. Farquharson,* it is said:

"In the second place, the appellants are not in a position to urge the objection in this court that there was no presentation of plaintiffs' claim or demand to the administrator. The record does not show that the objection was made in the court below and it cannot be taken for the first time in the appellate court."

This would seem to sustain the theory that the presentation of a claim could be waived, but the expression is inconsistent with the later ruling of the court as declared in the

*McFarland* and other cases. Since those decisions the statute must be taken as it reads, and the presentation is a fact essential to the cause of action as much so as the instrument sued on. Our conclusion is, therefore, that that part of the decision in the case of *Neis v. Farquharson,* hereinafter quoted, is not the law and should be overruled with the rest of the opinion. See *Barto v. Stewart,* 21 Wash. 605, 59 Pac. 480. The *McFarland* and succeeding cases seem to be sustained by the better reason, considering, as we should, that the rule of the common law which passed the legal title to the administrator without restriction is greatly modified, if not entirely overcome, by the laws of this state; for, although retaining in a sense the theory that the title is in the administrator, it is more as a fiction than a reality. The administrator does not personate the deceased as he did at common law. Therefore he is bound to act as he would for a principal, moving in the same way, asserting the same rights, and pleading the same defenses. If he had the personal interest and title of a common-law administrator, he might waive a right or a defense, and the remedy of the heir would be against the administrator as for a *devastavit;* but under modern conditions, he cannot waive that which a statute says shall be done, for the statute measures as well the limit of his power as the extent of the creditors' or strangers' right.

In writing this we have in mind the case of *Denney v. Parker,* 10 Wash. 218, 38 Pac. 1018, where the compromise of a claim by an administrator pending a lawsuit was affirmed. The case is not made to rest upon authority, unless it be the case of *Parker v. Providence & S. Steamboat Co.,* 17 R. I. 376, 22 Atl. 284, 23 Atl. 102, 33 Am. St. 869, 14 L. R. A. 414, and reference to that case will show that it was really bottomed upon a statute declaratory of the common law, giving an administrator power to arbitrate or compromise all doubtful claims independent of the order or direction of the court.

In the *Parker* case, it is said:

"Executors and administrators may submit to arbitration, or may adjust by compromise, any claims in favor of or against the estates by them represented, in the same manner and with the same effect as the testator or intestate might have done."

In some of the states the common law powers of an administrator are recognized by the courts notwithstanding the statutes. They seem to have been unwilling to break away from the common law; whereas it seems to us that the purpose of the statutes making an administrator amenable to the orders of the court was intended to avoid the uncertainty and confusion of the resultant rule as announced in most all of the older cases. We quote it from the Rhode Island case:

"If, in the exercise of this power, the executor or administrator, by reason of negligence, or any serious error in judgment, obtains a less sum than he would clearly be entitled to recover at law, he may be held to be guilty of a *devastavit*, and be required to make up the loss out of his own estate; but still the compromise, if made in good faith, would be binding upon the parties thereto. In *Rogers v. Hand*, 39 N. J. Eq. 270, 275, which was a case in which the executors compromised and settled a claim against the estate, without suit, the court says: 'When they act in good faith, those who would impeach their conduct must show fraud or mistake, or that they have acted without authority or contrary to law.' "

There is now no reason for ignoring our statutes and allowing an administrator to waive a right, or admit, by his action or inaction, a claim against an estate. The reasons stated in the *Denney* case are unsound. The case seems to have proceeded upon the theory that the probate court was something "over the hills and far away," whereas it was the same court in which the action was pending, and with full power in the same judge to discontinue the action at law until the probate record could be made up. *Sloan v. West*, 63 Wash. 623, 116 Pac. 272. The reasoning of the late

Chief Justice Dunbar, in his dissenting opinion to the decision under discussion, seems to us to be unanswerable.

Appellant further contends, and sought to put this contention into legal form by the proffer of an amended complaint alleging that, inasmuch as the special administrator did for eight or nine months administer the estate by acknowledging and paying claims, the executor should now be estopped to question his authority; especially so after stipulating to accept his answer as his own. It will be seen, by reference to the authorities cited, that the conduct of the special administrator in excess of his duties as defined by statute, nor the act of the administrator, can operate to deprive the estate of the benefit of the statutes of nonclaim. If we were to so hold, the estate would be put in a worse position by the appointment of an executor than it was before, for no action could have been maintained against the special administrator (§ 1424). Yet we are called upon to hold that an executor can ratify something that the statute expressly forbids. Appellant's remedy as a creditor was to ask for the appointment of some suitable person as administrator, so that he might present his claim in a formal way.

Affirmed.

CROW, C. J., GOSE, MOUNT, and PARKER, JJ., concur.