[No. 7529. Decided November 14, 1908.]

H. S. James, *Appellant,* v. Mary Lucetta James *et al.,*
*Respondents.*[1]

Divorce—Property Rights After Divorce—Husband and Wife—
Separate and Community Property. Where a decree of divorce did
not determine the rights of the parties in and to their real estate,
the separate property of the husband becomes his individual prop-
erty after divorce, and the community property becomes their joint
property.

Public Lands—Title Under Timber Act—Husband and Wife—
Separate Estate—Rule of Property—Stare Decisis. The decision
of the supreme court made fifteen years ago, that property acquired
by a married man under the timber and stone act is his separate
estate is a rule of property in this state to which the doctrine of
*stare decisis* applies in all its vigor.

Same. The rule that property acquired under the timber and
stone act is the separate property of the patentee is not affected by
the fact that community property was used in its purchase; and it
does not rest upon estoppel; nor would the title be affected by a
claim of a divorced wife to community funds used in its purchase.

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered March 21, 1908, upon findings in
favor of the defendant, in an action to determine the right
to proceeds of a sale of real property. Reversed.

*W. B. Osbourn* and *Hudson & Holt,* for appellant.

*Titlow & Huffer,* for respondent, contended, *inter alia,*
that the doctrine of *stare decisis* does not apply except to
decisions of courts of last resort as to the question involved.
*Adams v. Church,* 193 U. S. 510, 24 Sup. Ct. 512, 48 L. Ed.
769; *Anderson v. Carkins,* 135 U. S. 483, 10 Sup. Ct. 905,
34 L. Ed. 272; *Murdock v. Memphis,* 20 Wall. 590, 22
L. Ed. 429; *Shively v. Bowlby,* 152 U. S. 1, 14 Sup. Ct. 548,
38 L. Ed. 331; *Washougal & La Camas Transp. Co. v.
Dalles, Portland & A. Nav. Co.,* 27 Wash. 490, 68 Pac. 74;

[1]Reported in 97 Pac. 1113.

*First Nat. Bank v. Andrews*, 7 Wash. 261, 34 Pac. 913, 38 Am. St. 885; *Calhoun Gold Min. Co. v. Ajax Gold Min. Co.*, 27 Colo. 1, 59 Pac. 607, 83 Am. St. 17, 50 L. R. A. 209. The Supreme Court of the United States has since placed a different construction on the timber and stone act. *Williamson v. United States*, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278; *Brown v. Chicago etc. R. Co.*, 102 Wis. 137, 77 N. W. 748, 78 N. W. 771. The timber claim was, or at least the proceeds of the sale were, community property. *Kromer v. Friday*, 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671; *Hall v. Hall*, 41 Wash. 186, 83 Pac. 108, 111 Am. St. 1016; *Ahern v. Ahern*, 31 Wash. 334, 71 Pac. 1023, 96 Am. St. 912; *Northern Pac. R. Co. v. Kindred*, 14 Fed. 77; 1 Am. & Eng. Ency. Law (2d ed.), 1072. Appellant should be compelled to do equity by accounting for the profits arising from his unauthorized investment of the community trust funds committed to his charge. 1 Pomeroy, Equity Jurisprudence (3d ed.), §§ 386, 389; *Yesler v. Hochstettler*, 4 Wash. 349, 30 Pac. 398. The character of the earnings, whether separate or community property, earned while one is temporarily sojourning in a foreign jurisdiction, is fixed by the laws of this state. 1 Wharton, Conflict of Laws (3d ed.), p. 409, § 192a; 1 Story, Conflict of Laws (1st ed.), § 187.

RUDKIN, J.—The plaintiff H. S. James and the defendant Mary Lucetta James intermarried on the 14th day of January, 1891, and remained husband and wife until the 29th day of June, 1906. During the existence of the marriage relation, the husband and wife acquired an undivided one-half interest in a quarter section of land in Pierce county, which is conceded to have been community property, and the husband acquired an additional quarter section from the United States under the timber and stone act, which he claimed as his separate property. On the 29th day of June, 1906, the parties were divorced by the superior court of Pierce county, at the

suit of the husband. Their property rights were not brought before the divorce court by either complaint or answer, and no reference was made thereto in the decree. Some time after the divorce, the property above described was sold, but the defendant Mary Lucetta James refused to sign the deed to the purchaser, unless she was paid one-half of the net proceeds of the sale. It was thereupon agreed that the purchase price arising from the sale should be deposited in the defendant bank, in the joint names of the plaintiff H. S. James and the defendant Mary Lucetta James, and that their rights in the fund should be thereafter adjusted and determined. Pursuant to this agreement the property was conveyed, and the net proceeds of the sale of the two claims, amounting to the sum of $3,978.50, were deposited in the defendant bank.

This action was thereafter instituted by H. S. James to determine the rights and claims of the respective parties to the fund thus deposited. The court below found that the timber claim, as well as the other property, was the community property of the two spouses, and made an equal division of the fund between them. From this judgment the plaintiff has appealed.

The principal question involved on the appeal is the character of the land acquired under the timber and stone act. In other words, did it become the separate property of the entryman or the community property of the entryman and his wife. If it became the separate property of the husband at the time of its acquisition, it remains his separate property still; for, as said by this court in *Ambrose v. Moore,* 46 Wash. 463, 90 Pac. 588:

"Where no disposition of the property rights of the parties is made by the divorce court, the separate property of the husband prior to the divorce becomes his individual property after divorce, the separate property of the wife becomes her individual property, and from the necessities of the case, their joint or community property must become common property. After the divorce there is no community, and in the nature of things there can be no community property."

In *Gardner v. Port Blakely Mill Co.*, 8 Wash. 1, 35 Pac. 402, this court held that land acquired by a married man, under the act of Congress providing for the sale of timber lands, is his separate property, and can be alienated without the consent. of the wife. The reasons assigned for this conclusion were that husband and wife are each permitted to make entry of 160 acres under the provisions of the act; and that the entryman is required by § 2 of the act to make oath,

"That deponent has made no·other. application under this act; that he does not apply to purchase the same on speculation, but in good faith to appropriate it to his own exclusive use and benefit; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself."

This decision was rendered nearly fifteen years ago, and has become a rule of property in this state, and should not be overruled or departed from at this late day.

"If a decision has been made upon solemn argument and mature deliberation, the presumption is in favor of its correctness; and the community have a right to regard it as a just declaration or exposition of the law, and to regulate their actions and contracts by it. It would therefore be extremely inconvenient to the public if precedents were not duly regarded and implicitly followed. It is by the notoriety and stability of such rules that professional men can give safe advice to those who consult them; and people in general can venture with confidence to buy and trust, and to .deal with each other. If judicial decisions were to be lightly disregarded, we should disturb and unsettle the· great landmarks of property. When a rule has been once deliberately adopted and declared, it ought not to be disturbed, unless by a court of appeal or review, and never by the same court, except for very cogent reasons, and upon a clear manifestation of error; and if the practice were otherwise, it would be leaving us in a state of perplexing uncertainty as to the law." 1 Kent, Commentaries (14th ed.), p. 476.

"It will of course sometimes happen that a court will find a former decision so unfounded in law, so unreasonable in its deductions, or so mischievous in its consequences, as to feel compelled to disregard it. Before doing so, however, it will be well to consider whether the point involved is such as to have become a rule of property, so that titles have been acquired in reliance upon it, and vested rights will be disturbed by any change; for in such a case it may be better that the correction of the error be left to the legislature, which can control its actions so as to make it prospective only, and thus prevent unjust consequences." Cooley, Constitutional Limitations (7th ed.), p. 86.

The respondent contends that the doctrine of *stare decisis* has no application here for three reasons: First, because it did not appear in the *Gardner* case that community funds were used in the purchase of the timber claim; second, because the decision was based on the doctrine of estoppel; and third, because the supreme court of the United States has since placed a different construction on the timber and stone act.

The first reason assigned is without merit. If there was no proof as to the community or separate character of the purchase money, the presumption that community funds were used would necessarily prevail. Furthermore, the court said: "Admitting that the money so used was the property of the community, the situation would not be altered as to the ownership of the legal title to the land."

The second reason assigned is equally without merit. If the *Gardner* case were cited in support of the doctrine of estoppel, it might be contended with far greater reason that the decision was based on other grounds, for in the course of the opinion, the court said: "It is contended by the respondent that this land was the separate property of William Cadwell [the entryman] and this is the principal question in the case."

Without conceding the soundness of the third reason assigned, we do not think it is well founded in fact. That both husband and wife may make a timber and stone entry is not denied, nor can it be denied that the entryman is required

to take the oath required by § 2 of the act. There is nothing in the opinion of the supreme court of the United States in the case of *Williamson v. United States*, 207 U. S. 425, 28 Sup. Ct. 163, 52 L. Ed. 278, cited by the respondent, in conflict with the views expressed by this court in the *Gardner* case. In the *Williamson* case the court held that the land department had no authority to exact an affidavit from the entryman, *at the time of final proof*, to the effect that he did not apply to purchase the land on speculation, and that he had not directly or indirectly made any agreement or contract in any way or manner with any person or persons whatsoever by which the title acquired should inure in whole or in part to the benefit of any person except himself; and that perjury could not be assigned on such an affidavit, though false. In that case the court expressly conceded that such an affidavit was required of the entryman *at the time of filing*, under §2 of the act, and that a false oath made at that time constituted perjury. No reference whatever was made to the final proof affidavit in the *Gardner* case, and the decision in no manner hinged upon that affidavit.

We are therefore of the opinion that the doctrine of *stare decisis* applies to the decision in the *Gardner* case in all its vigor, and that the inconvenience which would result in a departure from the rule there established at this time would far outweigh any injury or inconvenience that may result from an erroneous decision of this, or any other individual case, arising under the timber and stone act.

Again, it is contended that the respondent has some claim to or interest in the timber land, because community funds were used in its purchase. Such claim, however, does not constitute an interest in or lien upon the property itself, and we cannot take cognizance of it, unless we now undertake to adjust the property rights of the parties as they should have been adjusted at the time of the divorce. It might be claimed, with an equal show of reason, that the appellant has some

claim or equity against the respondent because community funds were used in the purchase of the timber claim entered by her in the state of Oregon.

We are therefore of the opinion that the net proceeds arising from the sale of the timber claim are the separate and individual property of the appellant, and that he is entitled to a decree awarding the same to him; that the net proceeds of the sale of the remaining land is the joint property of the appellant and the respondent, and should be equally divided between them; and the judgment is reversed with directions to enter a decree accordingly.

FULLERTON, MOUNT, and DUNBAR, JJ., concur.

HADLEY, C. J., and CROW, J., took no part.


ON REHEARING.

[Decided January 6, 1909.]

RUDKIN, J.—Both parties to this appeal have petitioned for a rehearing, but the only ground of the respective petitions which we deem it necessary to consider is the claim that the mandate of this court is not sufficiently specific to enable the court below to enter a proper decree. When the appellant, H. S. James, and the respondent, Mary Lucetta James, were divorced without any settlement or adjustment of their property rights, their community property became common property, their separate property remained separate, their community indebtedness became their joint indebtedness, and their separate indebtedness remained separate. In entering its final decree the court below will deduct the joint indebtedness of the parties from the proceeds of the sale of their joint property and divide the residue between them share and share alike. The proceeds of the sale of the separate property of the appellant will be awarded to him. It seemed to us that this conclusion followed as a matter of course from what was said in the original opinion, but to avoid any possibility of further controversy or litigation we have deemed

it best to settle the matter finally at this time. With this explanation the petitions for rehearing·are denied.

HADLEY, C..J., FULLERTON, CROW, MOUNT, and DUNBAR, JJ., concur.